## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **AARON D.P. CHANDLER**<br>**9813 Tulip Tree Drive**<br>**Bowie, MD 20721**<br><br>**Plaintiff,**<br>**v.**<br><br>**DISTRICT OF COLUMBIA,**<br>**1350 Pennsylvania Avenue, NW**<br>**Washington, DC 20004**<br><br>**Gregory Jones**<br>**Third District Station**<br>**1620 V Street, NW**<br>**Washington, DC 20009**<br><br>**Unknown Officers Does 1-7**<br>**Third District Station**<br>**1620 V Street, NW**<br>**Washington, DC 20009**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL

Defendant District of Columbia, by and through undersigned counsel, respectfully

presents this Notice of Removal from the Superior Court of the District of Columbia,

Civil Division, pursuant to 28 U.S.C. § 1441, *et seq.*, and state as grounds for removal:[1]

1.      Plaintiff Aaron D.P. Chandler has filed an action against the defendants in

the Superior Court of the District of Columbia, Civil Division, Case No. 08 CA 0004099,

alleging that Plaintiff was falsely arrested on May 31, 2007.  Plaintiff brings claims of

assault and battery, false arrest and imprisonment, intentional infliction of emotional

---

[1] At the time of the filing of this Notice of Removal, upon information and belief,  Plaintiff had not served
Defendant Gregory Jones.

distress, and violation of Fourth, Fifth and Eighth Amendment rights. *See* Compl. *passim.*

2.      This action is removable to this Court because of the existence of federal questions raised by Plaintiff's Complaint. Causes of action "founded on a claim or right arising under the Constitution, treaties or laws of the United States" are removable without regard to the citizenship or residence of the parties. *See* 28 U.S.C. § 1441(b). In paragraphs 124-126, 134-142, and 148-158, the plaintiff raises a federal question by asserting federal claims under 42 U.S.C. § 1983.

3.      By filing this Notice of Removal, the District of Columbia does not waive its right to proper service of process, nor does it waive its right to move to dismiss for improper service of process or for dismissal based upon any other procedural or substantive ground.

Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders received or sent by undersigned counsel in this matter are attached hereto as Exhibit 1 and incorporated by reference herein.

WHEREFORE, the District hereby removes this action to this Court from the Superior Court of the District of Columbia, Civil Division.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

SAMUEL C. KAPLAN (463350)
Assistant Deputy Attorney General

SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax: (202) 727-3625
shana.frost@dc.gov


DATE:        July  1, 2008


## CERTIFICATE OF SERVICE

I hereby certify that on this ___ day of July, 2008, I caused the foregoing Notice of
Removal to be filed with the Clerk of the D.C. Superior Court using the CaseFileXpress
system, which will send notification of such filing to:

James P. Chandler
2020 Pennsylvania Avenue, NW
Washington, DC 20006

Shana L. Frost
Assistant Attorney General

3

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Aaron D.P. Chandler
9813 Tulip Tree Drive
Bowie, MD 20721

88888

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____Prince George's_____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

James P. Chandler
2020 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 296-8484

**DEFENDANTS**

District of Columbia, 1350 Pennsylvania Ave, NW, Washington, DC 20001
Gregory Jones, 3rd District, 1620 V Street, NW, Washington, DC 20009

N001

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:08-cv-01158
Assigned To : Kennedy, Henry H.
Assign. Date : 7/1/2008
Description: Civil Rights-Non-Employ.

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

◉ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**          OR          **○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☐ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ◉ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ◉ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

Violation of 4th, 5th, and 8th Amendment rights pursuant to 42 U.S.C. Sec. 1983

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint    JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)  YES ☐  NO ☒    If yes, please complete related case form.

DATE ___7/1/08___    SIGNATURE OF ATTORNEY OF RECORD

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_AARON D. P. CHANDLER_
Plaintiff

v.                                        Civil Action No.    08 1158

_District of Columbia ET AL_              JUL - 1 2008
Defendant

The above entitled action, removed from the Superior Court for the District of Columbia,

has been filed and assigned to Judge **KENNEDY, JR. J. HHK** counsel and/or pro se

litigants must include on any subsequent pleadings both the civil action number and the initials

of the judge assigned to this action.  (See preceding sentence for judge's initials).

Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the

bar of this Court to appear, file papers or practice.  To assist the Clerk's Office in properly

recording all counsel of record, counsel for all parties must enter their appearance in accordance

with our Local Rule 83.6(a).  Timely compliance with this requirement will enable the Clerk's

Office to ensure prompt delivery of notices and orders.

Finally, your attention is called to Local Rule 16.3, Duty to Confer.  This rule clearly

spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court

on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By _____
Deputy Clerk

cc: _JAMES P. CHANDLER_

929A
Rev. 7/02



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

AARON D P CHANDLER
Vs.
DISTRICT OF COLUMBIA

C.A. No.        2008 CA 004099 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge JEANETTE J CLARK
Date:  June 3, 2008
Initial Conference: 9:30 am, Friday, September 05, 2008
Location:  Courtroom 219
            500 Indiana Avenue N.W.
            WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

_____ _____ _____ *Plaintiff*

vs.

Civil Action No. **0004099-08** _____

_____ _____ *Defendant*

Serve: Mayor) Adrian Fenty

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below.   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

_____
Name of Plaintiff's Attorney

By _____

_____
Address

Deputy Clerk

_____
Telephone

Date _____

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (624-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

_____

Aaron D.P.Chandler                          )
9813 Tulip Tree Drive                       )
Bowie, MD 20721,                            )
                                            )
              Plaintiff                     )              0004099-08
                                            )
       v.                                   )     Civil Action No. _____
                                            )     Jury Demand
                                            )
District of Columbia,                       )
Severe the Following:                       )
                                            )
Major  Adrian Fenny                         )
1350 Pennsylvania Ave NW,                   )
6th Floor                                   )
Washington, D.C. 20009                      )

                                            )
                                            )
                                            )
                                            )
                                            )
                                            )
Peter Nichols, Acting General Counsel       )
441 4th Street NW                           )
Washington, D.C. 20001                      )
                                            )
and                                         )
                                            )
Gregory Jones,                              )
Third District Station                      )
1620 V St., NW                              )
Washington, D.C 20009                       )
                                            )
and                                         )
Unknown Officers Does 1- 7                  )
Third District Station                      )
1620 V. St., NW                             )
Washington, D.C. 20009                      )
                                            )
              Defendants.                   )
_____     )

RECEIVED
Civil Clerk's Office

JUN 0 3 2008

Superior Court of the
District of Columbia
Washington, D.C.

1

COMPLAINT

## (POLICE MISCONDUCT: VIOLATION OF RIGHTD UNDER THE CONSTITUTION OF THE UNITED STATES AND THE COMMON AND STATUTORY LAW OF THE DISTRICT OF COLUMBIA)

Plaintiff Aaron D.P Chandler ("Mr. Chandler " or " plaintiff"), by and through undersigned counsel, herby files this compliant against Greg Jones, unknown officers of the Metropolitan Police Department (" MPD") and the District of Columbia, asserting claims of false imprisonment, intentional infliction of emotional distress, violations of plaintiff's Fourth, Fifth and Eight Amendment rights, and violation of the Code of the District of Columbia, arising from the improper arrest and subsequent detention of Mr. Chandler on May 31, 2007. Plaintiff seeks damages, fees, costs and other appropriate relief.

## JURISDICTION AND VENUE

1.    Mr. Chandler brings this action to redress the deprivation of rights secured to her by the Untied States Constitution, as made actionable under 42 U.S. C. section 1982, and additional rights secured to him by the law of the District of Columbia.

2.    This court has jurisdiction over this action pursuant to D.C .Code Section11-921.

3.    Venue is proper in this Court  because the conduct giving rise to this action occurred in the District of Columbia.

## PARTIES

4.    Aaron Chandler, the Plaintiff herein is a resident of Maryland and the Executive Vice President of Txdel Holdings LLC a management & technology-consulting firm and works for clients in defense, security, and civilian government and the commercial sector.

2

5.      Defendant Greg Jones an officer of the District of Columbia Metropolitan Police Department. Upon information and belief Greg Jones is assigned to the third District, located at 1620 V Street, NW, Washington, D. C 20009. Officer Greg Jones is sued in his individual and official capacities.

6.      Defendants JOHN DOE #1 is an unknown officer of the District of Columbia Metropolitan Department. Upon information and belief he is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C 20009. Officer JOHN DOE #1 is sued in his individual and official capacities.

7.      Defendants JOHN DOE # 2 is an unknown officer of the District of Columbia Metropolitan Department. Upon information and belief he is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C 20009. Officer JOHN DOE #2 is sued in his individual and official capacities.

8.      Defendants JOHN DOE # 3 is an unknown officer of the District of Columbia Metropolitan Department. Upon information and belief he is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C 20009. Officer JOHN DOE #3 is sued in his individual and official capacities.

9.      Defendants JOHN DOE #4 is an unknown officer of the District of Columbia Metropolitan Department. Upon information and belief he is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C 20009. Officer JOHN DOE #4 is sued in his individual and official capacities.

10.     Defendants JOHN DOE #5 is an unknown officer of the District of Columbia Metropolitan Department. Upon information and belief he is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C 20009. Officer JOHN DOE #5 is sued in his individual and official capacities.

11.     Defendants JOHN DOE #6 is an unknown officer of the District of Columbia

Metropolitan Department. Upon information and belief he is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C 20009. Officer JOHN DOE #6 is sued in his individual and official capacities.

12.    Defendants JOHN DOE #7 is an unknown officer of the District of Columbia Metropolitan Department. Upon information and belief he is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C 20009. Officer JOHN DOE #7 is sued in his individual and official capacities.

13.    Defendant District of Columbia is a municipal corporation duly organized and existing under the laws of the United States and operates and governs the MPD pursuant to the laws of the District of Columbia/

14. The MPD, which employs Officers GREG JONES, JOHN DOE #1, JOHN DOE # 2, and JOHN DOE (collectively, " the Officers"), is a department of the District of Columbia government.

**FACTS**

**A. The Plaintiff's Unlawful Arrest and Detention**

15. Around midnight on May 31, 2007, plaintiff and his friend Jamitriace were walking e at the intersection of Massachusetts Ave and DuPont Circle.

16. Plaintiff and Ms. Jamitriace noticed  unusual  of police  car activity, including a parked  car with its flashing police lights on. There were also several police cruisers parked.

17.    Aaron Chandler was stopped  Officers Gregory Jones and accused of driving without a valid permit. Aaron is then arrested by Jones And other unknown officers.

4

18.     Approximately four years ago Mr. Chandler witnessed Officer Jones stop his friend Ray Hamilton for talking on a cell phone while driving.

19.     Mr. Hamilton was driving a car rented by his uncle.

20.     Jones told him that it was illegal for Mr. Hamilton to drive the car because his name was not listed on the insurance contract.  A search of the D.C. Code does not reveal this to be a criminal act.

21.     During this encounter Officer Jones yelled and acted aggressively, causing Chandler to ask for Officer Jones' badge number.

22.     Officer Jones turned away, obscuring his badge.

23.     His partner asked Chandler to step to the curb, and Officer Jones put Chandler in handcuffs.

24.     The officer then searched the car Mr. Hamilton was driving, without consent or warrant.

25.     Chandler was finally released from handcuffs after Officer Jones spoke by cell phone with Chandler's father, Professor James P. Chandler, President and Chairman of The Chandler Law Firm, Chartered.

26.     Before taking off the handcuffs, Officer Jones threatened Chandler by saying, "We can go right here," meaning "we can fight right here."

27.     Officer Jones did not permit Mr. Hamilton to leave the scene until his uncle arrived to drive the rental car.

28.     Officer Jones confronted Chandler, his brother, and some of their friends on numerous occasions after this incident.

29.      On the night of April 15th, 2007, Jamitriace Hawkins witnessed another incident

between Chandler and Jones.

30.     Chandler and Hawkins had both parked their cars on K Street, N.W. near the intersection with 15th Street.

31.     Chandler was parked about 100 feet behind Hawkins.

32.     He had walked up the street to Hawkins' car and was talking to her through the passenger window.

33.     A tow truck driver, who was trying to tow a vehicle from in front of Hawkins' car, asked her to back her car up.

34.     Hawkins backed her car up, but the tow truck driver asked her to back up further.

35.     Officer Jones was parked on the same street, in his patrol car, ahead of Hawkins and the tow truck.

36.     From his position on the street he had no view of Plaintiff, Chandler, Chandler's car, or the intersection Chandler had driven through before parking his car.

37.     The tow truck driver asked Jones to ask Plaintiff to move her car further.

38.     Jones swung his car around and blocked in Hawkins' car then approached Plaintiff' car and began speaking to her in an abrasive manner.

39.     Plaintiff noticed that Jones' presence made Chandler very uncomfortable

40.     Chandler said to Hawkins that she should give Jones whatever he asked for, or he would arrest her.

41.     Jones then checked Hawkins driver's license, which was current.

42.     She told him that she had just transferred from the NYPD to take a position with WMATA as a Metro Transit Officer.

43.     Jones then began yelling at Chandler.

44.    Hawkins sat and observed Jones.

45.    When Jones told her to leave, she drove a safe distance away and watched from across the street.

46.    Although Jones likely could not have seen Mr. Chandler driving his car, he insisted that Chandler submit to a field sobriety test.

47.    Chandler declined to take a breathalyzer test and, when taken to the station, again declined to be tested.

48.    As required by D.C. law, Chandler was entitled to a hearing before his driving privileges were automatically suspended in D.C. for refusing to take a breathalyzer. D.C. Code § 50-1906.

49.    He exercised his right to a hearing and his case had not yet been heard when he and Hawkins again encountered Jones shortly after midnight on May 31, 2007.

50.    Between April 15, 2007 and May 31, 2007, Officer Jones was involved in at least one other incident involving David Chandler and Ray Hamilton.

51.    On May 31, 2007,  Hawkins and Chandler had dinner in Maryland.

52.    Plaintiff drove Chandler's car into the District, while Chandler rode in the passenger seat.

53.    They parked a few blocks from DuPont Circle.

54.    Plaintiff and Chandler exited the car and had began walking when Hawkins decided to return to the car to apply makeup.

55.    Plaintiff was sitting in the passenger seat of the parked car applying makeup and Mr. Chandler was standing outside of the car when they noticed Officer Jones drive past them approximately three times.

56.     After applying makeup, Plaintiff exited the car and walked about a block with Mr.

Chandler before Officer Jones stopped them.

57.     On the evening of May 31, 2007 officer Jones claimed that he stopped them

because he was under the mistaken belief that Mr. Chandler was driving without a

license.

58.     As Officer Jones approached Chandler and Plaintiff, he threateningly accused

Chandler of filing a complaint against him.

59.     At this time Mr. Chandler had not filed a complaint.  Officer Jones proceeded, in

an intimidating and aggressive manner, to ask Chandler for his driver's license.

60.     Chandler complied and heard the operator on the police car radio say that the

license was valid.

61.     Despite learning that Chandler's license was not suspended, Officer Jones told

Chandler that he was arresting him for driving with a suspended license.

62.     Plaintiff was standing with Officer Mitchell, Jones' partner, while Officer Jones

and Chandler were talking.

63.      Upon hearing that Chandler was being arrested, Plaintiff told Officer Jones that

what he was doing was wrong.

64.     Jones asked Hawkins how she knew what he was doing was wrong and she

informed him that she worked for WMATA.

65.     Officer Jones then asked for  Hawkins identification, and Plaintiff showed him

her badge.

66.     Officer Jones then demanded that she leave the scene, told her the events did not

concern her, and told her that she could not be a witness to what she observed.

67.    Plaintiff replied that she would testify if called as a witness.

68.    Also, knowing the history of Officer Jones' harassment of Chandler, Plaintiff told Officer Jones that she would report him to the MPD Internal Affairs Bureau ("IAB").

69.    He responded by saying that he would report Ms. Hawkings to her WMATA supervisors and stated that he would "take care" of Plaintiff.

70.    Hawkins then left to retrieve Mr. Chandler's car and proceeded to the 3rd precinct police station.

71.    While in Mr. Chandler's car she was stopped by another MPD officer, apparently acting at the direction of Officer Jones, who requested her name and then let her go.

72.    Shortly after speaking to Plaintiff, Officer Jones called WMATA.

73.    While Hawkins waited in the lobby for Mr. Chandler, Sgt. Kirkpatrick and Sgt. Wigglesworth of WMATA arrived and spoke privately with Officer Jones before speaking to Plaintiff.

74.    In a statement given later that evening, Officer Jones made the following false accusations:  Hawkins was advised to remain on the scene; Hawkins interfered with the arrest of Mr. Chandler; Hawkins called Officer Jones a dirty cop; and Hawkins took out her badge with the intent to influence Officer Jones.

75.    Officer Jones also included false statements in his report about the incident.

76.    Hawkins spoke with Sgt. Kirkpatrick and Sgt. Wigglesworth shortly after they finished interviewing Officer Jones around 2:00 a.m.

77.    She began explaining that Officer Jones had abused his authority and that she was going to be a witness against Officer Jones at Mr. Chandler's breathalyzer refusal hearing.

78.     Before she could finish her statement, Sgt. Kirkpatrick cut her off, saying "Listen to me, you are not going to testify against another officer.  Do you understand me?"

79.     Hawkins again tried to explain herself, but was quickly cut off, by Sgt. Kirkpatrick, who stated, "You are not going to testify against any other officer and if you do I will make sure you lose your job so fast as Monday.  Do you understand me?"

80.     Hawkins did not respond did not respond to Sgt. Kirkpatrick's threat.

81.     Sgt. Kirkpatrick stated "Okay, looks like we are going to do this the hard way.  So I need you to write me a statement."

82.     Hawkins  finished writing her statement about her encounter with Officer Jones at about 4:30 a.m.

83.     At this time, Sgt. Kirkpatrick asked for Plaintiff' badge and told her to meet with Chief Shaw at 9:00 a.m.

84.     At 9:00 a.m. Plaintiff met with Captain Delinsky (who was the acting chief at the time) and Captain Pavlik, both of WMATA.

85.     Hawkins told them about her encounter with Sgt. Kirkpatrick and told them how she felt intimidated and threatened.

86.     Captain Delinsky stated that he could not comment on the statements made by Sgt. Kirkpatrick. Instead, Captain Delinsky simply stated that he had a termination letter for Plaintiff stating that she obstructed justice, and that he wanted her to sign it.

87.     Plaintiff asked Captain Delinskty how she could be terminated without an investigation. Captain Delinsky replied that the investigation consisted of reading the statements from Officer Jones and his partner, Officer Mitchell.

88.     The May 31, 2007 termination letter drafted by Captain Delinsky, relies wholly

upon the false statements made by Officer Jones.

89.    Chandler was not prosecuted for his arrest on the night of May 31, 2007. The on-duty officer at the police station refused to sign off on Jones' arrest of Chandler.

90.    Officer Jones was subsequently investigated by the IAB for harassing Chandler and, on information and belief, has either resigned or been fired.

91.    Thus, we believe that the city is aware that while acting for MPD, and the District of Columbia Officer Jones violated the Constitutional rights of citizens.

92.    Jones and the District acted intentionally in bad faith and have directly and proximately caused, and continue to cause, Plaintiff a loss of income and other financial benefits, emotional distress, embarrassment, humiliation, indignity, and damage to her professional reputation, the exact amount to be proven at trial, plus interest thereon.

93.    Plaintiff has filed a timely notice of claims with the City pursuant to Section 12-309 of the DC Code.

94.    The plaintiff and Ms. Jamitraice were then approached by two officers at the intersection of DuPont, and Massachusetts Ave, Plaintiff inquired of the officers whether something had happened about which he should be concerned. Rather than answering his questions, the officers were rude and non-responsive. Since officers could not be bothered to respond to a legitimate resident concern in a professional manner, Ms. Jamitraice indicated that there must be a better use of her tax dollars than to have a group of police officers standing around the intersection of DuPont circle and Massachusetts Ave. Officer GREG JONES aggressively demanded that she repeat what she had just said, but Ms. Jamitriace declined.

95.    The person with the plaintiff said that the plaintiff had been having problems with

the same Officers GREG JONES. Mr. Jones told her to mind her own business.

96. .    As Ms. Jamitraice and plaintiff were preparing to leave they heard GREG JONES

the officer telephone for a truck to pick up plaintiff. Two officers including GREG

JONES and JANE DOE followed them. The three officers approached plaintiff and Ms.

Jamitriace. The Officers demanded that plaintiff and Ms. Jamitraice put their hands

behind their back to be handcuffed.

97.    Ms. Jamitrace and plaintiff were asked for identification. Plaintiff repeatedly

inquired why they were being detained. The Officers did not respond. Instead they

searched plaintiff's person belongings. At no point did plaintiff become belligerent or

disorderly. Nonetheless, the Officers placed plaintiff in handcuffs.

91.    One of the Officers then told Ms. Jamitraice to shut up and stop asking questions

that the plaintiff was going to jail that she could obtain immediate release of MR.

Chandler by paying a cash fine.

98.    Mr. Chandler was transported to the Third District station where he was

handcuffed to a chair in the waiting area.

99.    Mr. Chandler continued to ask why he had been arrested. His questions were

again ignored.

100.    A short time later, Ms. Jamitrice arrived at the Third District Station and posted

bond.

101.    Shortly thereafter, GREG JONES approached Mr. Chandler in the cell, and

handed back his identification and a release form noting that at 2.50am, the sum of $

collated had been paid. Mr. Chandler asked whether he would then be released. The

officer ignored him and walked away. His paperwork indicated that Officer GREG

JONES had arrested her for driving bout a valid permit.

102.     During the night, an officer at the station told Mr. Chandler that they would be more inclined to release him if he would be patient.

103.     Though he had been holding his release papers for several hours, Mr. Chandler was not released from custody until approximately 7.00am.

104.     As a result of the events described above, Mr. Chandler suffered physical injury, pain mental anguish, fear, humiliated, and embarrassment.


**B. MPD Misuse of "Post and Forfeit"**

105.     At the time of Mr. Chandler's arrest, the District of Columbia government knew or should have known that MPD officers were demanding payment of collateral on the streets and without authorized personnel present, in violation of the Municipal Regulations of the District of Columbia.

106.     The District of Columbia knew or should have know that this improper use of post and forfeit would likely violate some arrestees' constitutional and statutory rights.

107.     At the time of Mr. Chandler's arrest, the District of Columbia government had not provided adequate training, nor adequate supervision, to MPD officers regarding the proper use of post and forfeit.

108.     The District of Columbia's actions and omissions reflects deliberate indifference to the constitutional and statutory rights of plaintiff Aaron D.P. Chandler.

109.    At the time of Mr. Chandler's arrest, it was clearly established as a matter of law that the government cannot arrest an individual without probable cause to do son.

110.    At the time of Mr. Chandler's arrest, it was clearly established as a matter of law that any amount of bail is excessive, and any fine is excessive, when there is no probable cause to believe an arrestee has committed a criminal offense.

111.    At the time of Mr. Chandler's arrest, it was clearly established as a matter of law that agencies of the District of Columbia are required to comply with their own internal regulations, as well as with the statutes and laws of the District of Columbia.


## DEFAMATION (LIBEL AND SLANDER) AGAINST JONES AND MPD

112.    Plaintiff incorporates, as though restated here, each of the allegations in paragraphs set above.

113.    As stated above, Defendant Jones knowingly made false statements to the effect that, on May 31, 2007 Plaintiff was driving without a valid permit.

114.    In reality, Officer Jones knew that Plaintiff was driving with an invalid permit.

115.    Officer Jones made false statements maliciously, knowing that these statements were false when he made them., claiming that plaintiff was a criminal with a long criminal record.

116.    Defendants' false statements were published to third persons, injured Plaintiff in his trade and future career prospects, and lowered her reputation in the estimation of his community.

117.    Officer Jones explicitly stated that he was going to make Plaintiff pay for his bad

behavior, demonstrating that he wanted to intentionally and willfully intimidate and injure Plaintiff.

118.    Defendants' statements about Plaintiff have had the intended effect of seriously damaging his professional reputation, which was otherwise outstanding.

119.    Defendants' statements have directly and proximately caused Plaintiff emotional distress, mental anguish, humiliation, pain and suffering, and damage to his professional reputation.

120.    None of the Defendants' statements were privileged. No qualified privilege exists for the making of these statements since defendants made these false statements with malice and ill will.

121.    Defendants' actions were taken with malice, spite, ill will, vengeance, or deliberate intent to harm Plaintiff, thereby warranting punitive damages against the Defendants.

122.    Greg Jones arrested plaintiff.

123.    There were other officers acting in concert with Jones (hereinafter the officers)


**CLAIMS FOR RELIEF**

I.    **Violation of Fourth Amendment Rights**

**(The Officers)**


124.    The Officers arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

125.    The Officers had no good faith or reasonable belief that probable cause existed to arrest plaintiff.

126.    The actions of the Officers deprived plaintiff of her rights under the Fourth Amendment to the Constitution of the United States to be free of unreasonable search and seizure, as made actionable by 42 U.S.C section 1983.

## II. False Arrest

## (The Officers)

127.    The Officers arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

128.    The Officers had no good faith or reasonable belief that probable cause existed to arrest plaintiff.

129.    The actions of the Officers in arresting plaintiff constitute false arrest under the common law of the District of Columbia.

130.    The violation by the Officers of D.C. Code Section 5-335.01 and D.C. Mun. Reg. Section 6A.7020.1 and 702.6 constitutes prima facie evidence that the Officers violated plaintiff's rights.

## III. Intentional Infliction of Emotional Distress

**(The Officers)**

131.    The Officers' conduct in (a) confronting and arresting plaintiff when they lacked probable cause to believe he had committed any crime, (b) retaliating against him to his critical comments y detaining him for hours after his bond had been posted, and (c) telling him that he would be released only if he sat down and be patient despite the fact that his collateral had already been tendered, was extreme and outrageous, and it was intentionally or recklessly calculated to cause severe emotional distress.

132.    The Officers' conduct did cause plaintiff severe emotional distress.

133.    The Officers' conduct constitutes intentional infliction of emotional distress under the common law of the District of Columbia.

## IV. Violation of Fifth Amendment Rights

**(The Officers)**

134.    The Officers arrested Mr. Chandler and required that he either post and forfeit or remain incarcerated, even though they had no probable cause to believe that plaintiff had committed or was about to commit a crime.

135.    The Officers had no good faith or reasonable belief that probable cause existed to justify prosecuting plaintiff.

136.    Because of the Officers' actions, Mr. Chandler now has an arrest record, which is likely to cause difficulty for him throughout his life.

137.    The Officers offered post and forfeit as the only option for resolving Mr. Chandler's arrest with the intent to punish Mr. Chandler for voicing criticism of the police.

138    The Officers' actions were specially calculated to ensure that their unlawful arrest would evade review, particularly because the Officers failed to inform Mr. Chandler of the 90-day window within which he could seek judicial review to his arrest.

139.    The actions of the Officers deprived plaintiff of his rights under the Fifth Amendment to the Constitution of the Untied States to be free of punishment prior to trail, as made actionable by 42 U.S.C section 1983.

## V. Violation of Eighth Amendment Rights

### (The Officers)

140. The Officers required plaintiff to post and forfeit a cash collateral  or remain incarcerated, even though there was no probable cause to believe that plaintiff had committed or was about to commit a crime.

141.The Officers had no good faith or reasonable belief that probable cause existed to justify plaintiff.

142. The actions of the Officers deprived plaintiff of his rights under the Eighth Amendment to the Constitution of the Untied States to be free of excessive bail and fines, as made actionable by 42 U.S.C section 1983.

### VI. Assault and Battery

**(The Officers)**

143.   The Preceding paragraph are incorporated and restated as if stated fully herein.

144.   Through their words and actions as described in paragraph 10-47 above, and in detaining, searching, touching, and arresting plaintiff without probable cause to believe he had committed or was about to commit a crime, the Officers intentionally threatened or attempted o commit harmful, offensive and excessive contact on the plaintiff.

145.   The Officers' words and actions described above cause plaintiff an imminent apprehension of harmful, offensive and excessive contact.

146.   Through their words and actions as described in paragraph 10-47 above, and in detain, searching, touching, and arresting plaintiff without probable cause to believe he had committed or was about to commit a crime, the Officers did intentionally cause harmful, offensive and excessive contact on the plaintiff.

147.   The Officers' words and actions constitute assault and battery violation of the common law of the District of Columbia.

**VII. Violations of Fifth Amendment Rights**

**(Defendant District of Columbia)**

148.   The preceding paragraph are incorporated and restated as if stated fully herein.

149.   The District of Columbia maintains a policy, custom or practice of offering post and forfeit to arrestees, without offering citation release.

19

150.    The policy, custom or practice described in the previous paragraph is implemented at times when the department's officers have no expectation that criminal charges will be pressed against the arrestee, including circumstances in which there is no probable cause that the arrestee committed the offense of disorderly conduct (or any other offense), in an attempt to avoid scrutiny for the officers; unlawful arrests.

151.    The District of Columbia fails adequately to train MPD officers regarding the proper use of the post and forfeit should not be used as a tool to keep arrestees incarcerated, and the District of Columbia fails adequately to train officers about the circumstances under which an arrestee should be release without having to post collateral. Likewise, the District of Columbia fails adequately to supervise police officers' resort to, and use of, post and forfeit.

152.    The lack of adequate training and supervision described in the previous paragraph leads police officers frequently to use post and forfeit as a form of punishment, in violation of arrestees' Fifth Amendment rights.

153.    At the time of Mr. Chandler's arrest, the District of Columbia had actual or constructive knowledge that police officers were misusing and forfeit in the ways alleged in this complaint.

154.    Both the policy, custom or practice alleged above and the failure to adequately train or supervise regarding post and forfeit reflect a deliberate indifference on the part of the government to the constitutional rights of arrestees.

155.    The failure of the Officers to offer plaintiff citation release, or simply release, or simply to release him for lack of probable cause in lieu of post and forfeit, was the result

of the District of Columbia's lack of adequate training or supervision regarding the use of post and forfeit, its unjustified animus towards individual who criticize the police, and its lack of desire for the plaintiff to appear in court o answer for his charges (because the District had no grounds upon which to base those charges).

156.    The policy, custom or practice of the District of Columbia, and its failure adequately to train or supervise its officers, caused plaintiff to be deprived of his rights under the Fifth Amendment to the Constitution of the United Stated to be free of punishment prior to trail, as made actionable by 42 U.S. C section 1983.

## VIII: Violation of Eighth Amendment Rights

## (Defendant the District of Columbia)

157.    The preceding paragraph are incorporated and restated as if stated fully herein.

158.    The failure of the Officers or the District of Columbia to immediately release Mr. Chandler upon receipt of his collateral caused plaintiff to be deprived of his rights under the Eighth Amendment to the Constitution of the United States to be free of excessive bail and fines, as made actionable by 42 U.S.C section 1983.

## IX: False Arrest

## (Respondent Superior Liability of the District of Columbia)

159.    The preceding paragraph are incorporated and restated as if stated fully herein.

160.    The Officers acted within the scope of their employment with, and acted on behalf of and in the interest of, the District of Columbia MPD, when they arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

161.    The actins of the Officers in arresting plaintiff constitute false arrest under the common law of the District of Columbia.

162.    The violation by the Officers of D.C Code section 5-335.01 and D.C. Mun. Reg. Section 6A.702.1 and 702.6 constitutes prima facie that the Officers violated plaintiff's rights.

163.    The Conduct of the District of Columbia, by and through the actions of employees under its control and supervision acting within the scope of their employment, constitutes false arrest under the common law of the District of Columbia.

164. The District of Columbia is liable for the intentional torts of its employees acting within the scope of their employment.


## X: Intentional Infliction of Emotional Distress

### (Respondeat Superior Liability of the District of Columbia)

165.    The preceding paragraph are incorporated and restated as if stated fully herein.

167.    The Officers acted within the scope of their employment with, and acted on behalf of and in the interest of, the District of Columbia MPD, in (a) confronting and arresting

plaintiff when they lacked probable cause to believe he had committed any crime, (b) retaliating against him for his critical comment by detaining him for hours after his bond had been posted, and (c) telling him that he would be releases only if he sat down and be patient despite the fact that her collateral had already been tendered.

168.    The actions of the Officers described above were extreme and outrageous, and intentionally or recklessly calculated to cause plaintiff severe emotional distress.

169.    The Officers' conduct did cause plaintiff severe emotional distress.

170.    The Officers' conduct constitutes intentional infliction of emotional distress under the common law of the District of Columbia.

171.    The conduct of the District of Columbia, by and through the actions of employees under its control and supervision acting within the scope of their employment, constitutes intentional infliction of emotional distress under the common law of the District of Columbia.

172.    The District of Columbia is liable for the intentional torts of its employees acting within the scope of their employment.


## XI: Assault and battery
### (Respondant Superior Liability of the District of Columbia)

173.    The preceding paragraph are incorporated and restated as if stated fully herein.

174.    The Officers acted within the scope of their employment with, and acted on behalf of and in the interest of, the District of Columbia MPD, when committing the

actions described in paragraph 10-47 above, and in detaining, searching, touching, and arresting plaintiff without probable cause to believe he had committed or was about to commit a crime.

175.    The Officers acted within the scope of their employment with, and acted on behalf of and in the interest of, the District of Columbia MPD when the Officers intentionally threatened or attempted to commit harmful, offensive and excessive contact on the plaintiff.

176.    The Officers' words and action described above caused plaintiff an imminent apprehension of harmful, offensive and excessive contact.

177.    The Officers acted within the scope of their employment with, and acted on behalf of and in the interest of, the District of Columbia MPD when, through their words and action as described in paragraph 10-47 above, and in detaining, searching, touching, and arresting plaintiff without probable cause to believe he had committed or was about to commit a crime, the Officers did intentionally harmful, offensive and excessive contact on the plaintiff.

178.    The Officers' words and actions constitute assault and battery in violation of the common law of the District of Columbia.

179.    The conduct of the District of Columbia, by and through the actions of employees under its control and supervision acting within the scope of their employment, constitutes assault and battery under the common law of the District of Columbia.

180.    The District of Columbia is liable for the intentional torts of its employees acting within the scope of their employment.

## **PRAYER FOR RELEIF**

1.    WHERFORE, plaintiff requests that the Courts (a) enter judgment holding defendant liable to plaintiff for compensatory damages in an amount appropriate to the proof adduced at trail; (b) enter judgment holding the Defendant Officers liable to plaintiff for punitive damages in an amount appropriate to the proof adduced at trail; (c) enter judgment imposing injunctive relief that (1) bars the Districts of Columbia from incarcerating arrestees who are eligible for citation release or post and forfeit, but who lack the funds to post collateral, (2) requires the District of Columbia to offer citation release, as well as post and forfeit, to arrestees who are eligible for both, (3) requires that the District of Columbia train and supervise police officers in the proper use of citation release and post forfeit; and (4) requires that the District of Colombia immediately release any arrestee who had posted requisite bail, bond, or collateral;(d) requires that the District of Columbia properly inform all arrestee offered Post-and-Forfeit of their 90-day window within which to challenge their arrest, (e) award plaintiff hi costs and reasonable attorneys' fees; and (f) An order that Defendants Jones and the District of Columbia retract the false statements they made about Plaintiff's actions during the May 31, 2007 incident, and cease and desist from making further comments

about Plaintiff;(g)   An award to plaintiff of reasonable attorneys' fees and costs;

and (h) An award to plaintiff of punitive damages against defendant, on his claim

for defamation in an amount appropriate to the proof. (I) All other relief the court

deems just equitable.

26

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Aaron D.P.Chandler                          )<br><br>       Plaintiff         )<br><br>  v.                      )<br><br>    District of Columbia,  )<br>    441 4th Street NW    )<br>    Washington DC 20001 )<br>and                    )<br><br>Gregory Jones,        )<br>Third District Station   )<br>1620 V St., NW       )<br>Washington, D.C 20009 )<br>                      )<br>and                    )<br>Unknown Officers Does 1- 7 )<br>Third District Station   )<br>1620 V. St., NW      )<br>Washington, D.C. 20009 )<br>        Defendants.  )<br>                      ) | Civil Action No. _____<br>          Jury Demand |

**JURY DEMAND**

Plaintiff request that his claims be trail by a jury.

Respectfully submitted,

James P. Chandler (D.C Bar # 270686)
THE CHANDLER LAW FIRM PLLC
2020 Pennsylvania Ave N.W, Suite 100
Washington, D.C 20006
Counsel for Plaintiff Aaron D. P Chandler